UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA W., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security Administration, <br><br> Defendant. | Case No. ED CV 18-1092-SP <br><br> MEMORANDUM OPINION AND ORDER |

**I.**

**<u>INTRODUCTION</u>**

On May 23, 2018, plaintiff Sandra W. filed a complaint against defendant, the Commissioner of Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Under the overarching argument that the residual functional capacity

("RFC") assessment was not supported by substantial evidence, plaintiff presents two disputed issues for decision: (1) whether the administrative law judge ("ALJ") properly considered the opinions of the treating physicians; and (2) whether the ALJ properly developed the record and considered the opinion of the consultative examiner. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 17-25; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 1-11.

Having carefully studied the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered the opinions of the treating physicians but failed to properly develop the record. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was 48 years old on the alleged disability onset date, attended school through the twelfth grade but did not obtain a high school degree. AR at 45, 74. She has past relevant work as a screen printer and insurance clerk. *Id*. at 66.

On June 18, 2014, plaintiff filed applications for a period of disability, DIB, and SSI due to physical problems, shoulder problems, hand and wrist problems, and depression. *Id*. at 74, 87. The applications were denied initially and upon reconsideration, after which plaintiff filed a request for a hearing. *Id*. at 132-44.

On December 16, 2016, the ALJ held a hearing. *Id*. at 40-73. Plaintiff, represented by counsel, appeared and testified at the hearing. *Id*. The ALJ also heard testimony from Sandra Fioretti, a vocational expert. *See id*. at 65-71. On February 17, 2017, the ALJ denied plaintiff's claims for benefits. *Id*. at 23-35.

Applying the well-known five-step sequential evaluation process, the ALJ

found, at step one, that plaintiff had not engaged in substantial gainful activity since July 9, 2008, the alleged onset date. *Id.* at 25.

At step two, the ALJ found plaintiff suffered from the following severe impairments: right wrist status post arthroscopic surgery; right shoulder impingement; obesity; complex regional pain syndrome ("CRPS"), lumbar spine degenerative disc disease; thoracic spine degenerative disc disease; and cervical spine degenerative disc disease. *Id.* at 25-26.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 27.

The ALJ then assessed plaintiff's RFC,[1] and determined plaintiff had the RFC to perform light work,[2] with the limitations that plaintiff could: frequently push and pull with the bilateral upper extremities; occasionally reach overhead with the right upper extremity; and frequently handle and finger with the right upper extremity. *Id.* at 28. The ALJ precluded plaintiff from climbing ladders, ropes, or scaffolds, and from exposure to unprotected heights and moving mechanical parts. *Id.*

The ALJ found, at step four, that plaintiff was capable of performing her past relevant work as an insurance clerk. *Id.* at 34. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

[2] "Light work involves lifting no more than 20 pounds as a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

Security Act. *Id.* at 35.

Plaintiff filed a timely request for review of the ALJ's decision, but the Appeals Council denied the request for review. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that

4

of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

# IV.
# DISCUSSION

**A.** **The ALJ Properly Considered Dr. Griggs's Opinion, and Her Failure to Consider the Opinions of the Other Treating Physicians Was Harmless Error**

Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ failed to properly consider the opinions of plaintiff's treating physicians. P. Mem. at 17-22. Specifically, plaintiff argues that the ALJ failed to provide specific and legitimate reasons for giving little weight to the opinion of Dr. Sean Griggs and ignored the opinions of other treating physicians. *Id.*

RFC is what one "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The Commissioner reaches an RFC determination by reviewing and considering all of the relevant evidence. *Id.* Among the evidence the ALJ considers is medical evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b).[3] In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-

---

[3] All regulations cited in this opinion are applicable to claims filed before March 27, 2017.

(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

    1.    **Treating Physicians**

        a.    **Dr. Sean M. Griggs**

Dr. Sean Griggs, an orthopedic surgeon, treated plaintiff's right wrist in connection with her workers' compensation claim from approximately September 2008 through June 2009, when he left the practice. *See* AR at 304-34, 365. On January 2, 2009, Dr. Griggs performed arthroscopic surgery on plaintiff's right wrist and made a postoperative diagnosis of right wrist ulnar abutment syndrome with lunate osteoarthritis and grade III chondromalacia. *See id.* at 323-24. Five months after the surgery, plaintiff continued to complain of pain and stiffness in her right hand despite physical therapy and pain medication. *See id.* at 308. Dr. Griggs observed plaintiff had limited range of motion in her right shoulder and

fingers, limited supination and pronation, and flexion contracture in two fingers. *See id*. Dr. Griggs also noted that plaintiff had been tested for CRPS. *See id*. Based on the June 2009 examination and complaints, Dr. Griggs opined plaintiff should not use her right upper extremity. *See id*.

### b. Dr. Peter C. Janes

Dr. Janes, an orthopedic surgeon, treated plaintiff three times between May 2009 and January 2010 in connection with her workers' compensation claim. *See id*. at 363-66. At the initial visit, Dr. Janes observed, among other things, plaintiff had pain in the right upper extremity when manipulated, her wrist motion was poor, and her fingers were in a flexed posture. *See id*. at 365. Dr. Janes referred plaintiff to Dr. Ross Dickstein, an anesthesiologist, to test for CRPS.[4] *See id*. At the second visit in June 2009, Dr. Janes observed that plaintiff's fingers, other than the pinky, had a bit better extension but she still had incomplete flexion and could not make a fist. *See id*. at 364. In addition, plaintiff had prominence of the ulna and withdrew her hand when offered in a handshake. *See id*. Dr. Janes limited plaintiff to lifting one to two-pounds with the right upper extremity. *See id*. Finally, in January 2010, after the synthetic blocks with Dr. Dickstein were unsuccessful, Dr. Janes again observed plaintiff was in pain, had clawed fingers, and a bony prominence. *See id*. at 363. Dr. Janes explained that plaintiff should see a CRPS specialist instead. *See id*.

### c. Dr. Robert Stroheker

Dr. Stroheker, a family medicine physician, treated plaintiff in connection with her workers' compensation claim from July 2008 through at least March 2012. *See id*. at 426-94. Dr. Stroheker observed, among other things, plaintiff continued to have pain after her surgery, she had limited range of motion in her shoulders, and her right hand was in a claw shape. *See, e.g., id*. at 470, 475, 477.

---

[4] Dr. Dickstein's treatment notes are not included in the administrative record.

7

In August 2009, plaintiff reported to Dr. Stroheker that she had been diagnosed with CRPS. *Id*. at 468. In December 2009, plaintiff informed Dr. Stroheker a nerve block had not helped and although she felt somewhat better, she still had pain in her right upper extremity. *Id*. at 451. Dr. Stroheker observed plaintiff had pain with movement in her right upper extremity, a firm cyst ventral mid wrist, persistent finger flexures, sharp pain in the right wrist, and limited range of motion in the right shoulder, and advised to her seek treatment from specialists. *Id*. Dr. Stroheker opined plaintiff could not lift, carry, push, or pull over five pounds. *Id*. at 452. By March 2010, however, Dr. Stroheker listed her limitations "as tolerated" and did not list any limitations from August 2011 forward. *See id*. at 426-33, 442.

### d. **Dr. Larry H. Couture**

Dr. Couture, a family physician, treated plaintiff from December 2014 through at least April 2016. *See id*. at 682-90. At the initial visit, plaintiff informed Dr. Couture she developed CRPS as a result of her hand surgery and suffered from migrating arthralgias and numbness in her legs. *See id*. at 687. Dr. Couture observed plaintiff had severe pain in her right wrist with light pressure and passive bending/flexing, mild diffuse pain in her arms and legs at specific points midway between joints, and ordered imaging. *See id.* at 687, 690. The MRIs and x-rays showed, among other things: mild-to moderate central canal narrowing in the cervical spine; mild multilevel degenerative changes in the lumbar spine; and mild chronic compressions deformity in the thoracic spine. *See id*. at 666-81. Handwritten notes on the MRI results indicate plaintiff was advised to treat her lumbar spine with RICE (rest, ice, compression, and elevation), over the counter pain medication, and physical therapy, and was referred to an orthopedic surgeon about her cervical spine. *See id*. at 667, 671, 679. Based on the examinations and imaging, Dr. Couture diagnosed plaintiff with spinal stenosis in the cervical region

and fibromyalgia and treated her with pain medication. *See id*. at 683.

   e. **Dr. Hamilton Chen**

  Dr. Chen, a physicatrist, treated plaintiff twice in October and November 2016 for her neck and back pain. *See id*. at 701-11. Dr. Chen reviewed plaintiff's imaging and observed plaintiff: ambulated with a walker; had tenderness, pain, and reduced range of motion in the neck; had normal movement in her joints, bones, and muscles in all extremities; had pain upon rotation in the lumbar spine; tenderness over lumbar facet joints; and had an irregular gait. *See id*. at 710-11. Dr. Chen diagnosed plaintiff with spinal stenosis in the cervical region and degeneration of cervical intervertebral disc, and treated her with physical therapy and opioids. *See id*. at 702, 711.

  2. **Examining Physicians**

   a. **Dr. Kathy Fine McCranie**

  Dr. McCranie, a physiatrist, examined plaintiff on August 12, 2009 in connection with her workers' compensation claim. *Id*. at 355-61. Plaintiff reported pain in her right upper extremity, which increased with writing, sleeping on the right side, and lifting. *Id*. at 358. Plaintiff informed Dr. McCranie that she quilted, scrapbooked, bowled, gardened, and was able to ambulate independently. *See id*. at 359. Dr. McCranie observed plaintiff had: full motor strength; decreased sensation in the right upper extremity except the palm had increased sensation; decreased range of motion in the right shoulder and wrist; and swelling and contractures in the right fingers. *See id*. at 359-60. Dr. McCranie diagnosed plaintiff with CRPS type I in the right upper extremity and status post arthroscopic surgery of the right wrist, showing lunate osteoarthritis and grade III chondromalcia. *Id*. at 360. Dr. McCranie recommended plaintiff repeat the stellate ganglion block followed by physical therapy. *Id*. at 360-61.

   b. **Dr. Vincent R. Bernabe**

Dr. Bernabe, an orthopedic surgeon, examined plaintiff on September 26, 2014. *Id*. at 600-04. Dr. Bernabe did not review any medical records. *Id*. at 600. Plaintiff told Dr. Bernabe that she continued to have sharp, throbbing, burning pain in her right wrist and upper extremity following her surgery and the pain was exacerbated by prolonged lifting, standing, and walking. *Id*. At the time of the examination, plaintiff was no longer receiving physical therapy and took only aspirin for pain. *Id*. at 601. Dr. Bernabe observed plaintiff: could do a 50% squat; had no tenderness along her cervical and lumbar spine; had normal range of motion in the cervical and lumbar spine; had normal range of motion in her shoulders but positive impingement in the right; had tenderness to palpation in the right wrist along the dorsum; had normal range of motion in her hands and fingers; and had full motor strength. *See id*. at 602-03. Dr. Bernabe also observed that although plaintiff entered the examination room with a cane, it was not medically necessary because she could ambulate unassisted and do a toe and heel walk. *Id*. at 602. Based on the examination, Dr. Bernabe opined plaintiff had the RFC to: lift/carry fifty pounds occasionally and twenty-five pounds frequently; push and pull frequently; and perform manipulative activities frequently on the right upper extremity. *Id*. at 604.

### 3. State Agency Physicians

Dr. A. Wong and Dr. Alicia V. Blando, State Agency physicians, reviewed plaintiff's medical records through September 2014 and determined plaintiff had the RFC to: lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk six hours in an eight-hour work day; sit six hours in an eight-hour work day; occasionally reach overhead with the right upper extremity; and frequently handle and finger with the right upper extremity. *See id*. at 79-84, 92-97, 108-12, 121-25.

### 4. The ALJ's Findings

In reaching her RFC determination, the ALJ considered all of the medical

evidence, as well as plaintiff's testimony and behavior at the hearing. *See id*. at 33. The ALJ did not give significant weight to any physician's opinion, but instead considered all the opinions in light of the evidence as a whole. The ALJ gave partial weight to Dr. Bernabe's and the State Agency physicians' opinions, noting that although she agreed with their assessment that plaintiff was capable of working, greater weight could not be given for several reasons. *See id.* Dr. Bernabe's opinion was based on a one-time examination and did not have the opportunity to consider plaintiff's subsequent neck and back impairments. *See id*. And the State Agency physicians did not review the entire medical record, did not examine plaintiff, did not account for plaintiff's recent back and neck pain, and did not adequately consider plaintiff' subjective complaints. *See id.* The ALJ also gave little weight to Dr. Griggs's October 2008 opinion that plaintiff be limited to lifting and carrying five pounds because it was made shortly after her injury and before surgical intervention. *See id*. The ALJ found there was no evidence plaintiff required this limitation long term. *See id*. at 33-34.

The regulations state that an ALJ must consider the opinions of treating, examining, and State Agency physicians. *See* 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Lester*, 81 F.3d at 830. Here, the ALJ considered the treatment notes of Dr. Griggs, Dr. Stroheker, and Dr. Janes, but only expressly discounted Dr. Griggs's October 2008 opinion that plaintiff be limited to lifting and carrying five pounds. *See* AR at 33, 334. Although neither Dr. Stroheker nor Dr. Janes completed a formal functional capacity opinion, both offered opinions in their treatment notes. In December 2009, Dr. Stroheker opined plaintiff was unable to return to work and should engage in minimal use of her right upper extremity with a limitation of five pounds for lifting, carrying, pushing, and pulling. *See id.* at 452. Four months later, Dr. Stroheker again opined plaintiff was unable to return to work until an unspecified time, and determined she had reached maximum

11

medical improvement,⁵ but he did not specify any specific limitations other than "as tolerated" and "minimal use of [right upper extremity]". *See id*. at 442. As for Dr. Janes, in a January 2010 treatment note, he opined plaintiff should not lift anything exceeding two pounds with her right upper extremity. *Id*. at 363.

Regarding, the ALJ's rejection of Dr. Griggs's October 2008 opinion, the ALJ provided specific and legitimate reasons for giving it less weight. The ALJ explained that she gave little weight to Dr. Griggs's October 2008 opinion that plaintiff should be limited to lifting and carrying five pounds because it was made prior to surgical intervention and there was no evidence that the limitations persisted for a sustained period of time, or throughout the adjudication period. *See* AR at 33-34. First, the ALJ's rejection of Dr. Grigg's pre-surgery opinion is specific and legitimate. As Dr. Griggs's treatment note of the same date clearly indicated, the limitation was only temporary until plaintiff underwent and recovered from surgery.⁶ *See id*. at 313, 334. The ALJ's second reason for discounting Dr. Griggs's October 208 opinion was also supported by substantial evidence. Although the medical records indicate plaintiff continued to suffer from pain in her right upper extremity, plaintiff ceased seeking treatment for her right upper extremity in January 2011 and was able to manage the pain with aspirin for several years.⁷ *See id*. at 435, 601, 687-90. Finally, as the ALJ discussed

---

⁵ In workers' compensation parlance, maximum medical improvement means a condition is stabilized and unlikely to change, and not that the person is or is not disabled under the Social Security Act. *See* Cal. Code Regs. tit. 8, § 10152 (2013).

⁶ Plaintiff does not discuss Dr. Griggs's June 2009 post-surgery opinion that she should not use her right upper extremity. *See* AR at 308. Similar to the October 2008 opinion, Dr. Griggs's treatment notes indicate the limitation was temporary while plaintiff sought treatment. *See id*.

⁷ Plaintiff was later treated with opioids, but the record suggests this pain treatment was primarily for her subsequently developed neck and back pain. *See,*

12

elsewhere in her decision, plaintiff's activities reflect she was capable of activities greater than the opined limitations. Plaintiff took care of dogs and horses, including their feedings.[8] *See id.* at 272, 696; *Shephard v. Berryhill*, 722 Fed. Appx. 641, 643 (9th Cir. 2018) (ALJ properly discounted physician's opinion when the opined restrictions were inconsistent with the claimant's activities); *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (conflict between opined functional limitations and daily activities is a valid reason for rejecting a physician's opinion).

As for Dr. Janes and Dr. Stroheker, the ALJ discussed their findings but failed to consider their opinions. The ALJ's failure to consider their opinions was harmless error. With respect to Dr. Janes, his opinion was a temporary assessment. In the same treatment note in which Dr. Janes opined a one-two pound lifting restriction for the right upper extremity, Dr. Janes also indicated that the plan was for the treatment to result in a functional extremity. *See* AR at 363-64. Regarding Dr. Stroheker, notwithstanding the fact that his opinions lacked specificity, plaintiff's subsequent treatment and activities undermined his opinion that plaintiff had severe restrictions and her condition was unlikely to change. *See id.* at 29, 33. *See also Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("an ALJ may discredit [] opinions that are conclusory, brief, and unsupported by the record as a whole"). After her initial treatment with opioids, plaintiff was able to manage her right upper extremity pain with aspirin. *See* AR at 442, 601. More important, Dr. Stroheker's limitations were inconsistent with plaintiff's demonstrated activities.

---

*e.g.,* AR at 711 (although plaintiff reported a history of wrist pain, she went to physician for evaluation of her neck and back pain)

[8] Although plaintiff testified her husband cleaned up after and fed the horses on their property, this was inconsistent with his statement that she brushed and watered the horses, and with her medical records, which documented she fractured her ankle while feeding the horses in 2016. *See* AR at 272, 696.

13

*See Shephard*, 722 Fed. Appx. at 643; *Ghanim*, 763 F.3d at 1162.

In sum, the ALJ provided specific and legitimate reasons supported by substantial evidence for discounting Dr. Griggs's opinion, and her failure to consider Dr. Stroheker's and Dr. Janes's opinions was harmless error.

**B.** **The ALJ Failed to Properly Develop the Record**

Plaintiff contends the ALJ's RFC determination was not supported by substantial evidence because she failed to properly develop the record. P. Mem. at 22-25. Specifically, plaintiff argues the ALJ had a duty to fully and fairly develop the record by retaining a consultative examiner or having a State Agency physician review her medical records and offer an opinion concerning any limitations relating to her neck and back impairments. *Id*.

When the record is ambiguous or inadequate for proper evaluation, the Commissioner has a duty to develop the record. *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *see also Mayes*, 276 F.3d at 459-60 (ALJ has a duty to develop the record further only "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"); *Smolen*, 80 F.3d at 1288 ("If the ALJ thought he needed to know the basis of [a doctor's] opinion[ ] in order to evaluate [it], he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physician[ ] or submitting further questions to [him or her]."). This may include retaining a medical expert or ordering a consultative examination. 20 C.F.R. §§ 404.1519a(a), 416.919a(a). The Commissioner may order a consultative examination when trying to resolve an inconsistency in evidence or when the evidence is insufficient to make a determination. 20 C.F.R. §§ 404.1519a(b), 416.919a(b).

Here, in her decision and RFC determination, the ALJ found plaintiff's degenerative disc disease in the lumbar, thoracic, and cervical spines were severe impairments. AR at 25-26. The ALJ reviewed 2015 MRIs and x-rays which

reflected that, in addition to degenerative disc disease, plaintiff had, among other things, foraminal endplate spurring, foraminal stenosis, scoliosis, and atherosclerotic disease. *See id*. at 31-32. The ALJ also noted examination findings that showed tenderness and pain in the lumbar, an irregular gait, and abnormal sensation in the lower extremities. *See id*. at 32. But no physician submitted an opinion as to the extent plaintiff's back and neck impairments affected her ability to function because, as the ALJ acknowledges, plaintiff's neck and back impairments manifested after Dr. Bernabe and the State Agency physicians submitted their opinions. *See id*. at 33. Consequently, the ALJ relied on her own lay interpretation of the medical evidence to determine that the mild to moderate degenerative changes in plaintiff's spine did not affect her functional capacity. *See id*.

This was improper. Although an ALJ interprets the medical records to reach an RFC determination, the RFC determination must be supported by substantial evidence. Here, there was no medical evidence of how the neck and back impairments affected plaintiff's functioning. An ALJ may not act as her own medical expert because an ALJ is "simply not qualified to interpret raw medical data in functional terms." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *see Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ should not make his "own exploration and assessment" as to a claimant's impairments); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); *Hamasyan v. Berryhill*, 2018 WL 6025596, at *5 (C.D. Cal. Nov. 16, 2018) (the ALJ could not properly rely on his own lay understanding of medical records and exams to gauge the functional limitations); *Miller v. Astrue*, 695 F. Supp. 2d 1042, 1048 (C.D. Cal. 2010) (it is improper for the ALJ to act as the medical expert); *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (ALJ is not

qualified to extrapolate functional limitations from raw medical data). The ALJ should have retained a consultative examiner or medical expert in order for her to make an informed determination supported by substantial evidence regarding the extent to which plaintiff's back and neck impairments limited her ability to function.

Accordingly, the ALJ erred in failing to further develop the record.

## V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required to further develop the record. On remand, the ALJ shall retain a consultative examiner or medical expert to help her inquiry. The ALJ shall then reassess plaintiff's RFC, and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.

## **RECOMMENDATION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: September 27, 2019

_____
SHERI PYM
United States Magistrate Judge